IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 16, 2002 Session

## STATE OF TENNESSEE v. WILLIAM A. MARSHALL

**Appeal from the Criminal Court for Sumner County**
**No. 777-1999     Jane W. Wheatcraft, Judge**

_____

### No. M2001-02954-CCA-R3-CD - Filed October 14, 2002

_____

The defendant, William A. Marshall, appeals the Sumner County Criminal Court's revocation of his probation of a two-year sentence for sexual battery. Because we disagree with the trial court's view of whether the defendant satisfied a condition of his probation by "completing" a sexual offender treatment program, we reverse the revocation and dismiss the warrant.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Reversed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Walter H. Stubbs, Gallatin, Tennessee, for the Appellant, William A. Marshall.

Paul G. Summers, Attorney General & Reporter; Elizabeth T. Ryan, Assistant Attorney General; Lawrence Ray Whitley, District Attorney General; and Sallie Wade Brown, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

Facing a 1997 indictment charging sexual battery, the defendant pleaded guilty to the offense, and the trial court entered a judgment on September 16, 1997 that imposed a two-year, suspended sentence. The judgment orders as a condition of the probation that the "defendant is to be accepted and complete the sexual perpetrator's program at Luton Mental Health."

On September 13, 1999, the state filed a probation violation warrant that alleged the defendant failed to observe the special condition that he complete the program at Luton. At a hearing on the warrant, evidence showed that the sexual offender treatment program, which had just been inaugurated as a part of the "Tennessee Standardized Treatment Program for Sex Offenders" (TSTPSO) at the time of the defendant's sentence, could not be completed within two years. After the October 1999 hearing, the trial court ruled that "the defendant has violated the terms and conditions of [his] suspended sentence but through no fault of his own. Based upon oral testimony

and the entire record in this cause, the program could not be completed by the defendant in two years." The court extended the defendant's probation for the maximum extension period of two years, *see* Tenn. Code Ann. § 40-35-308(c) (1997), and ordered him to comply with the original condition that he complete the Luton program. The defendant did not pursue an appeal of this ruling.

On September 4, 2001, the state filed another probation violation warrant, which alleged that the defendant failed to observe the special condition that he complete the program at Luton. In the hearing on this warrant, the defendant's probation officer testified that she had stressed with the petitioner the necessity of not allowing anything to interfere with his appointments at Luton. Despite this warning, he would change jobs and call Luton to reschedule his appointments. The defendant traveled out of state in connection with his work as a truck driver, and the probation officer had a "hard time getting [the defendant] to comply with the policy of probation and parole as far as letting [the officer] know where he is at all times when he goes out of state." She received telefacsimilies of the defendant's out-of-state itineraries, but for a time, they were illegible. Ultimately, the defendant agreed to come to the probation office and personally deliver his itineraries. The officer agreed that the only basis for revocation was his failure to complete the Luton program and that he had paid all of his fees, fines, and costs. Moreover, he had regularly reported to the officer and had regularly attended sessions at Luton on a weekly basis.

A clinical therapist at Luton testified that the defendant's treatment program involved both group and individual therapy. The program entailed the completion of a series of ten modules in which the participant completes homework assignments. The therapist testified that participants may learn the information from the assignments and may have completed the modules, "but that does not mean they're applying what they have learned." She emphasized that the program is "task based" and not "time based." She stated that the therapists make their "decisions based on [their] observations, and . . . so we move on after a task has been completed." She testified that, unless a participant has responded adequately to the treatment so that the therapist sees changes in his or her behavior, the participant has not completed the module, even if the assignments have been completed.

The therapist estimated that, if a participant put forth great effort, he or she should be able to complete the program in "about 4 years." When asked to comment upon testimony from the 1999 revocation hearing that, for some outpatients, the program could run for nine years, she conceded that "[i]t is possible," although she thought that, in a best-case scenario, the outpatient program would run four to five years. She testified that she could not recall an outpatient completing the program in less than four years, although she believed that, because of the newness of the program, no one else had had an opportunity to complete it. She agreed that the defendant was one of the first enrollees. She testified that, at the time the defendant was enrolled, no one really knew how long the program would run. Nevertheless, she opined that it was possible to complete the program in four years. She admitted, however, that during the defendant's treatment, there had been no effort to communicate to him what he would be required to accomplish as a means of completing the program within the second two-year probation period: "We have not sat down with him and

developed a treatment plan that outlines the different points that need to be addressed in the modules that need to be worked through."

The therapist thought the defendant's progress through the program was hampered by his "minimal" participation. She testified that, although she was not his therapist until May 8, 2000, she understood that before she took over the case, the defendant was "angry about having to be there, and as a result, he was not really applying himself at treatment."

The defendant had once been placed on "therapeutic probation" because of two unexcused absences from therapy meetings. On one occasion, a tree fell on his truck, and Luton determined that the defendant did not adequately attempt to find alternate transportation. The second unexcused absence was attributed to the defendant because, although he attended the meeting, he left his homework assignment in another vehicle and failed to bring it to the meeting.

The therapist admitted that, since May 8, 2000, the defendant had been "attending and bringing his assignments and showing up on time. . . . He has applied himself more, participated more in group, and actively worked on the assignments." She revealed that the defendant was on pace in completing modules with the other members of the group. Realizing that the defendant was approaching the end of his probationary period, Luton gave him the "preventive relapse module," and the defendant completed his assignments in this module.

The state introduced into evidence the treatment summary issued by Luton. According to the summary, the defendant "was generally compliant with treatment and appeared to make satisfactory progress" during the first two year period. After his probation was extended two years as a means of continuing with the program, the defendant "appeared unmotivated for treatment and he only minimally participated." He evinced a "hostile manner" because he blamed the treatment staff for the court's decision to extend his probation. However, after he was informed that his "behavior in treatment would influence treatment progress reports in the future," he cooperated. Later, after he was informed that he would not complete his treatment prior to the expiration of the extended probation period, the defendant became angry and "misrepresented his situation to the group, . . . blaming his treatment providers." The summary authors, one of whom was the therapist who testified at the hearing, opined that his anger and "misrepresentation" are "consistent with Mr. Marshall's style of shifting responsibility for his behavior and presenting himself as the victim." The report concluded as follows:

> In summary, Mr. Marshall has personality characteristics that interfered with his sincere participation in treatment and subsequent true behavior change. These character problems in the context of his history, place him at risk for re-offense. While in treatment, it should be noted that Mr. Marshall continually resisted treatment choosing instead to blame treatment providers and make other excuses for his failure to benefit from treatment. While there is no evidence that Mr. Marshall has reoffended against another child, he has not appeared to

have learned appropriate skills for intimacy . . . as he engaged in relationships outside of his primary long-term live-in relationship. Consequently, he is at risk to use his skills at manipulation and offend again in the future whether it be with children or vulnerable adult women.

The defendant testified in the hearing that, when he pleaded guilty and entered the treatment program, no one advised him that he could not complete the program in the first two years. He affirmed that he had met all of his obligations to report to his probation officer, had paid all of his fines, costs, and fees, and had committed no new offenses.

The defendant testified that he has attended 190 therapy sessions and pays $200 per month in program fees. He also took time from work to attend treatment and estimated that, including lost work time, the total cost to him for treatment was between $600 to $800 per month during the four-year period.

He acknowledged that communication problems arose when he began working for a company that required him to drive longer distances with pick-up points being unknown when he began the trips in Tennessee. He had difficulties getting his itineraries to his probation officer ahead of time. Ultimately, he changed jobs and began personally delivering the itineraries.

The defendant testified that he has followed the rules of the treatment program and has benefitted from it, becoming "more self-aware and more aware of his surroundings." He testified that Luton had never informed him that he was behaving in a hostile manner or that he was participating minimally. Although he claimed he had been participating in the program to the best of his ability, he acknowledged that participating to the best of his ability had been "off and on."

In rebuttal, the therapist testified that, even with utmost cooperation, the defendant would need nearly a year to complete the program, even though he has completed the assignments in all ten modules.

After hearing the evidence, the trial judge expressed her concern that, in view of the defendant's resistance to treatment, he poses a threat to reoffend. Based in large measure upon the Luton report indicating a risk of reoffending, she revoked the probation and ordered the defendant to serve his sentence in the Department of Correction. The trial court's written order recited that the defendant violated the terms and conditions of his probation by not fulfilling the requirement to "complete the sexual perpetrator's program at Luton Mental Health."

On appeal, the defendant challenges the trial court's revocation of his probation on the grounds that the lower court's decision was arbitrary, the conditions of probation were either impossible or unreasonably burdensome to perform, and they exceeded the scope of the sentencing powers conferred upon the court by the legislature. He also claims that the second probation order was a nullity because his original probation had expired prior to the filing of the first violation

warrant in 1999. We disagree that the first violation warrant was time barred, that the condition of probation was impossible to perform, that the issue of the reasonableness of the condition is before us in this appeal, and that the conditions exceeded the court's sentencing powers; however, we conclude that the record and the applicable law fail to demonstrate a basis for revoking probation. Consequently, we reverse the decision of the lower court and dismiss the violation warrant.

With certain exceptions not presently applicable, a person convicted of a crime and receiving a sentence of eight years or less is eligible for probation. Tenn. Code Ann. § 40-35-303(a) (Supp. 2001). A court granting supervised probation must state the terms of the supervision and "may require the offender to comply with certain conditions which may include, but are not limited to: . . . (4) Undergo[ing] available . . . psychiatric treatment . . . ." *Id.* § 40-35-303(d) (Supp. 2001). In ordering supervised probation, the trial court may also "impose any terms and conditions not inconsistent with the Tennessee Sentencing Reform Act." *State v Johnson*, 980 S.W.2d 410, 413 (Tenn. Crim. App. 1998). However, the conditions of probation "must be reasonable and realistic and must not be so stringent as to be harsh, oppressive or palpably unjust." *Stiller v. State*, 516 S.W.2d 617, 620 (Tenn. 1974). The trial court has discretion to impose conditions of probation, but that discretion is subject to appellate review. *State v. Bouldin*, 717 S.W.2d 584, 586 (Tenn. 1986).

When the state brings a proceeding to revoke probation, it is required to prove by a preponderance of the evidence that the probationer violated the conditions of probation. Tenn. Code Ann. § 40-35-311(d) (Supp. 2001). If the probationer violates the conditions of probation, the trial court is empowered to revoke the probation and "cause the defendant to commence the execution of the judgment as originally entered." *Id.*

The appellate court reviews an order of probation revocation for abuse of discretion. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). On appeal, the trial court's decision to revoke probation will not be reversed unless it appears arbitrary. *State v. Williamson*, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981). The appellate court is not authorized to substitute its judgment for that of the trial court when the order of revocation is supported by any substantial evidence that the defendant violated the conditions of probation. *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980).

Effective in 1996, the legislature enacted the TSTPSO and established the sex offender treatment board, which was charged with the responsibility of developing "guidelines and standards for a system of programs for the treatment of sex offenders which can be utilized by offenders who are placed on probation." Tenn. Code Ann. § 39-13-704(d)(2) (Supp. 2001). If a defendant who is accused of committing one or more specified sex offenses seeks probation or other form of alternative sentence, the trial court must obtain an evaluation of the defendant. *Id.* § 39-13-705(a) (Supp. 2001). "If the court grants probation or alternative sentencing, any plan of treatment recommended by such evaluation shall be a condition of the probation or alternative sentencing." *Id.* § 39-13-705(b). The treatment described in Code section 39-13-705(b) is part of a standardized program in Tennessee to evaluate, identify, treat, and monitor sex offenders. *Id.* §§ 39-13-701, -702 (1997).

## I. Procedural Challenge to the
## Revocation order.

We first address the defendant's claim that the 1999 violation warrant was time barred, with the result that the ensuing revocation and two-year extension of the probationary period was void. The record reflects that the defendant's guilty plea was accepted – and the two-year sentence was imposed – by the trial court on September 16, 1997. The first violation warrant was filed on September 13, 1999; however, the defendant had earned six days of pretrial jail credit. Essentially, he argues that when the six days' credit is applied to the two-year sentence, the sentence expired on September 10, 1999, three days before the violation warrant was filed.

We disagree in light of *State v. Dennis R. Jacks*, No. E2000-00643-CCA-R3-CD (Tenn. Crim. App., Knoxville, May 7, 2001), *perm. app. denied* (Tenn. 2001), in which this court held that the defendant's nine days of pretrial jail credit did not accelerate the expiration of his sentence. *Id*., slip op. at 2. Jacks received a three-year sentence, of which all but 60 days was probated. He claimed that after applying the nine days' pretrial jail credit, the sentence expired nine days before the third anniversary of the imposition of the sentence, a date prior to the filing of a probation violation warrant. *Id*. This court rejected that argument and held that the allowance of pretrial jail credit did not affect the third-anniversary expiration date of the sentence. *Id*. In our view, *Dennis R. Jacks* is dispositive of the defendant's claim in the present case. The first probation warrant was timely filed.

## II. Substantive Challenges to the
## Revocation Order.

### (a)

Next, we address the defendant's claim that the trial court imposed conditions of probation which were beyond the scope of its sentencing authority. We disagree with the defendant on this point because the legislature has specifically authorized trial courts to require a probationer to submit to psychiatric treatment. *See* Tenn. Code Ann. § 40-35-303(d)(4) (Supp. 2001). Moreover, the TSTPSO, enacted by the legislature, mandates the treatment program for convicted sex offenders who are placed on probation and whose pre-plea evaluation indicates the aptness of the program. *See id.* § 39-13-705 (Supp. 2001). We recognize that the record in the present case does not reflect whether the defendant's evaluation indicated a need for the treatment program, thereby making the program a required condition of probation. Had the evaluation not recommended the treatment program, it would have been the defendant's responsibility, as the appellant, to include the evaluation report in the record. The appellant is obliged to ensure that the record on appeal contains all material necessary to permit a full and fair review of the issues which form the bases of the appeal. *State v. Banes*, 874 S.W.2d 73, 82 (Tenn. Crim. App. 1993). However, even without a showing that the trial court was required to order treatment as a condition of probation, the court had the authority to order treatment via Code section 40-35-303(d)(4).

**(b)**

We now consider the defendant's claim that the requirement of sex offender treatment as a condition of probation was impossible to perform and should not, therefore, be enforced. Again, we disagree.

Although the evidence convincingly shows that the outpatient treatment program was not capable of being completed within the first two years, the defendant did not appeal the trial court's 1999 ruling that resulted in the two-year extension of his probation. *See* Tenn. Code Ann. § 40-35-401(a) (appeals may be had from the imposition of the manner of service of a sentence if the appeal is "taken within the same time and in the same manner as other appeals in criminal cases"); Tenn. R. App. P. 4(a) (to be timely, notice of appeal must be filed "within 30 days after the date of entry of the judgment appealed from"). The evidence in the 2001 revocation proceeding, however, does not convincingly show that the outpatient program could not be completed in a total of four years. Although there were indications that the outpatient program in individual cases could run longer than four years, no one testified that it was impossible to complete the program in four years. Thus, we conclude that the record does not establish the defendant's claim that it was impossible to perform this condition of probation within the allotted four years.

**(c)**

We now consider the defendant's claim that, if not impossible to perform, the requirement of completing the treatment program was unduly harsh or burdensome. Although, as we have pointed out, conditions of probation must be "reasonable and realistic" and may not be so "stringent as to be harsh, oppressive, or palpably unjust," *Stiller*, 516 S. W.2d at 620, this proposition is supported uniformly by cases in which the defendant appealed the terms of the probation *at the time* the probation was imposed, not after the probation was revoked. *See, e.g., State v. Bouldin*, 717 S.W.2d 584 (Tenn. 1986); *State v. Gaines*, 622 S.W.2d 819 (Tenn. 1981); *State v. Stiller*, 516 S.W.2d 617 (Tenn. 1974); *State v. Johnson,* 980 S.W.2d 410 (Tenn. Crim. App. 1998); *State v. Matheny*, 884 S.W.2d 480 (Tenn. Crim. App. 1994). We doubt whether the defendant may wait until a revocation has been declared before he attacks the reasonableness of the probation condition, at least when the circumstances of the performance of the condition are known or foreseeable at the time of imposition. *See* Tenn. Code Ann. § 40-35-401(a) (1997); Tenn. R. App. P. 4(a). To the extent that the defendant knew in 1999 that he faced two more years of the same program in which he had already participated for two years, he knew what to expect. To the extent that the defendant may be complaining that it was not foreseeable in 1999 that the program could not be completed in a total of four years, we address that issue in the following subsection, in which we opine that the defendant did "complete" the program within the allotted time.

**(d)**

We now address whether the record supports the trial court's finding that the defendant failed to comply with the condition of his probation that he "complete" the sex offender treatment program at Luton.

Before we fathom the meaning of the term "complete" in the context of the Luton program, we must first comment on the defendant's claim in his brief that the trial court erred because it failed to find a *willful* violation of probation. To support his argument, the defendant cites a well-recognized line of cases which hold that when a probationer fails to meet conditions of his probation that require the payment of a fine or restitution, the court must find that the breach is willful. *See, e.g., Bearden v. Georgia* 461 U.S. 660, 103 S. Ct. 2064 (1983); *State v. Dye*, 715 S.W.3d 36, 40 (Tenn. 1986). Thus, the requirement of a willful violation has been utilized to distinguish between a probationer who is at fault in not paying his fine or restitution from one who fails to pay merely because he is too poor. *Bearden*, 103 S. Ct. at 2068-73 (although the court is concerned with the due process and equal protection rights of "indigents in our criminal justice system," it acknowledges that when the probationer "has willfully refused to pay the fine or restitution, when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction to enforce collection"). Because the due process and equal protection rights of indigents were at stake in *Bearden* and *Dye*, we believe those cases are inapt in the task before us, which does not involve the defendant's failure to pay a monetary obligation. Thus, our decision will not turn upon whether the defendant's asserted noncompliance with his probation condition was *per se* willful.

Rather, because the trial court fashioned the probation condition in terms of the defendant *completing* the sex offender treatment program and found that he had breached the requirement by not *completing* the program, we must examine the meaning and effect of the term "complete."

On the one hand, the state argues that the defendant failed to complete the program because the evidence showed that as a result of the defendant's oppositional, uncooperative attitude, he prolonged the treatment. This view is supported by the therapist's testimony that the defendant at times participated minimally, evinced anger over having his treatment extended through a second two-year period, blamed treatment providers for his lack of progress, and failed to elicit from the treatment providers a subjective belief that he was sincere and that he had undergone a "true" behavior change. Also, the defendant testified that he gave his best efforts in treatment "off and on." In finding ultimately that the defendant had not completed his treatment, the trial judge relied heavily upon Luton's report that the defendant was "at risk to use his skills at manipulation and offend again in the future whether it be with children or vulnerable adult women."

On the other hand, the evidence showed that the task-based program had no finite time frame. The treatment providers had never experienced anyone completing the program. They did not inform the defendant until too late what was required of him to complete the program. Also

they failed to inform him that he was not on schedule to complete the program within the four-year period, at least in the sense that they had subjectively determined that the defendant had not sincerely assimilated the treatment dogma. In four years, the defendant missed only one session, otherwise attending 190 sessions and paying his treatment fees. During the first two-year period, the defendant was "generally compliant with treatment and appeared to make satisfactory progress." After his angry reaction to the October 1999 extension of his probation, the defendant, by May 8, 2000, was "attending and bringing his assignments and showing up on time [and began] appl[ying] himself more, participat[ing] more in group, and actively work[ing] on the assignments." He was on pace with the other group members in completing his modules and had completed all of his assignments in all ten modules, including the "preventive relapse module."

Thus, we glean from the record two different perceptions of the requirement to "complete" the treatment program. Pursuant to the state's view, the defendant did not complete the program because he failed to internalize the treatment dogma and, essentially, failed to convince the treatment providers that the program had influenced his future behavior. In the view most helpful to the defendant, he completed the program via attending the sessions, paying his fees, and completing the assignments in all ten modules of the program. Collateral to this view are the possible perceptions that any anger he exhibited was fairly responsive to the goal-line being moved by the court and the treatment providers and that the treatment providers were blameworthy for never defining the yard-markers and never explaining to the defendant his progress in reaching his goal.

In determining which of the two meanings of "completing" the program is more apt, we look to the statutory underpinnings of the treatment concept. We infer from the record as a whole that the Luton program was a treatment program contemplated by Code section 39-13-705(b), which mandates in certain situations the treatment component of the TSTPSO. This legislative enactment contains a statement of intent, which includes the following statement: "The general assembly hereby recognizes that some sex offenders cannot or will not respond to treatment and that, in creating the program described in this part, the general assembly does not intend to imply that all sex offenders can be successful in treatment." Tenn. Code Ann. § 39-13-702(b) (1997). We infer from this statement that, although the aim of the treatment program is to alter the behavior of the participants, if not effectively to "cure" them, the treatment can be completed by individuals who are not "successful in treatment." This statement lends credence to the view that the defendant completed the treatment program by fulfilling all of the objective standards and by cooperatively participating during a substantial portion of the treatment period. *See State v. Mounger*, 7 S.W.3d 70, 77 (Tenn. Crim. App. 1999) ("The sex offender treatment statutes do not contemplate that the court give unfettered deference to the evaluator.")

In conclusion, we hold that the defendant completed his treatment and, accordingly, fulfilled this condition of his probation. We base this holding upon the guidance offered by the legislature, the defendant's fulfillment of the objective standards of the treatment program, and his otherwise positive participation in the treatment, despite lapses in his attitude which may in part be understood as frustration with the failure to avail to him useful information about the program's

duration and requirements. Thus, we reverse the judgment of the trial court and dismiss the probation violation warrant.

_____
JAMES CURWOOD WITT, JR., JUDGE